UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 13-CR-00074 (RC)** |
| | : | |
| v. | : | **VIOLATIONS:** |
| | : | **18 U.S.C. § 371** |
| **MARTHA DALE WEBB TEMPLIN,** | : | (Conspiracy to Dispense Controlled |
| | : | Substance Butalbital and Introduce |
| Defendant. | : | Misbranded Drugs into Interstate |
| | : | Commerce) |
| | : | **18 U.S.C. § 1956(a)(2)(A) and (h)** |
| | : | (Conspiracy to Engage in International |
| | : | Money Laundering) |
| | : | **18 U.S.C. § 982(a)(1) and 21 U.S.C. § 853** |
| | : | (Criminal Forfeiture) |

## I N F O R M A T I O N

The United States Attorney charges that:

### COUNT ONE

CONSPIRACY

Beginning on or about September, 2005 and continuing through April, 2008, within the District of Columbia, the State of Pennsylvania, and elsewhere, the defendant, **MARTHA DALE WEBB TEMPLIN**, and others known and unknown to the grand jury, did knowingly and intentionally combine, conspire, confederate and agree with others both known and unknown,

    a. To defraud the United States and its agencies, specifically, the Food and Drug Administration by circumventing the drug distribution system established to protect consumers by regulating, among other things, the distribution of prescription drugs;

    b. To commit an offense against the United States, that is, with the intent to defraud and mislead, to introduce into interstate commerce, misbranded drugs,

    by dispensing prescription required drugs without the valid prescription of a properly licensed medical practitioner within the meaning of 21 U.S.C. §352(f), in violation of 21 U.S.C. §331(a) and 333(a)(2); and

c.     To distribute and cause to be distributed by dispensing specifically butalbital, a schedule III controlled substance (sold under the trade name of Fioricet) in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(E).

## Goal of the Conspiracy

It was the goal of the conspiracy to obtain money and other things of value by distributing controlled substances and prescription required non-controlled substances to customers ordering such drugs over the internet.

## Manner and Means

It was part of the conspiracy that:

A.     Customers in the United States placed orders for controlled substances and prescription required non-controlled substances over the internet for websites owned and operated by RX Limited doing business as Alphanet when these customers were not required to be examined by a physician and when said customers merely completed an on-line medical questionnaire. Prescriptions issued by a practitioner or a covering practitioner not involving an actual in person medical examination are issued outside the usual course of professional practice. 21 U.S.C. §829(e) and 21 C.F.R. §1306.04. All such internet prescriptions whether issued by a duly licensed physician or a person pretending to be a duly licensed physician are illegal and

      invalid because they were issued not for a legitimate medical purpose by a practitioner acting in the usual course of professional practice.

B.    The defendant, **MARTHA DALE WEBB TEMPLIN,** who has not ever been a licensed physician, with the assistance of agents of RX Limited, doing business as Alphanet, fabricated a license of a New York State physician, which she used to "approve" online orders for prescription required controlled substance and non-controlled substance pharmaceuticals, as if she were a duly licensed physician. RX Limited agreed to pay her $2 per approved internet prescription. The defendant, **MARTHA DALE WEBB TEMPLIN,** would review her email account, usually about twice a week, and approve internet orders for prescription required pharmaceuticals from RX Limited, and while doing so approving as many as 300 orders at a time, totaling 147,513 prescription orders over the length of her participation in the conspiracy. Between September 11, 2005 and April 11, 2008, Rx Limited transferred funds totaling $295,027.50 from the Netherlands, HSBC Bank and from Standard Chartered Bank in Hong Kong to her Bank of America account ending in x8497. Among the drug orders she approved as a participant in this rogue internet pharmacy scheme was fioricet, containing butalbital, a Schedule III controlled substance. About 22% of the internet drug orders she approved were for butalbital.

C.    The website owners and conspirators enlisted the participation of pharmacies and pharmacists, to fill these internet pharmacy orders for prescription required controlled substance and non-controlled substance pharmaceuticals, and then dispensed such

pharmaceuticals by U.S. Mail, and other interstate common carriers. One such participating pharmacy was Super Pharmacy LLC of Washington, D.C.

D. Some drugs regulated by the Food and Drug Administration, which enforces the Food Drug and Cosmetic Act, 21 U.S.C. §301 et seq., (hereinafter, FDCA) are "prescription drugs." "Prescription drugs" are those drugs which because of their toxicity or other potential harmful effects, or the method of their use, or the collateral measures necessary to their use are not safe for use except under the supervision of a practitioner licensed by law to administer such drugs. 21 U.S.C. §353(b)(1)(A) and (B). The FDCA prohibited the introduction or delivery for introduction into interstate commerce any drug that was deemed misbranded. 21 U.S.C. §331(a). Prescription drugs dispensed not under the supervision of a properly licensed medical practitioner are misbranded within the meaning of 21 U.S.C. §352(f). The act of dispensing prescription drugs without the prescription of a practitioner licensed by law to administer such a drug is an act which causes the drug to become misbranded while held for sale. 21 U.S.C. §353(b)(1). RX Limited, Alphanet, and its affiliated websites operated to mislead customers into believing that they were dispensing prescription required pharmaceuticals lawfully, and operated in a manner to defraud the United States and its agencies, particularly the Food and Drug Administration, by circumventing the drug distribution system established to protect U.S. customers and to ensure the safety and the public health of U.S. customers. RX Limited, doing business as Alphanet and its affiliated websites, sold and dispensed misbranded prescription drugs to internet customers. This conduct is in violation of 21 U.S.C. §331(a) and 333(a)(2).

## OVERT ACTS

In furtherance of said conspiracy and to effect and accomplish the objects thereof, the following overt acts, among others, were committed in the District of Columbia, and elsewhere:

1. Between September 11, 2005, and April 11, 2008, the defendant, **MARTHA DALE WEBB TEMPLIN,** approved internet customer orders for prescription required controlled and non-controlled drugs, totaling 147,513 prescription orders.

2. Between September 11, 2005, through February, 2008, Super Pharmacy, LLC, of Washington, D.C. filled internet orders for RX Limited, doing business as Alphanet, some of which were approved by the defendant, **MARTHA DALE WEBB TEMPLIN**.

(**Conspiracy to Defraud, Dispense Butalbital and to Introduce Misbranded Drugs into Interstate Commerce**, in violation of Title 18, United States Code, Section 371)

## COUNT TWO

Conspiracy to Engage in International Money Laundering

Beginning on or about September 11, 2005 and continuing through, on or about, April 11, 2008, within the District of Columbia, the State of Pennsylvania, and elsewhere, the defendant, **MARTHA DALE WEBB TEMPLIN,** and others known and unknown to the grand jury, did combine, conspire, confederate and agree with others both known and unknown, to transport, transfer, and transmit and attempt to transport, transfer, and transmit funds, from a place outside the United States to a place in the United States, that is, RX Limited doing business as Alphanet, its owners and agents, transferred funds totaling $295,027.50 from the Netherlands, HSBC Bank,

and from Standard Chartered Bank in Hong Kong to a Bank of America account in Pennsylvania, ending in x8497 and belonging to the defendant, **MARTHA DALE WEBB TEMPLIN,** with the intent to promote the carrying on of a specified unlawful activity, to wit, distributing and dispensing controlled substances, and knowing that such funds represented the proceeds of some form of unlawful activity.

(**Conspiracy to Engage in International Money Laundering**, in violation of Title 18, United States Code, Sections 1956(a)(2)(A) and (h))

### FORFEITURE ALLEGATION

1. Upon conviction of the offenses alleged in Counts One and Two, the defendant shall forfeit to the United States, pursuant to 21 U.S.C. § 853(a), any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of this offense; and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of this offense.  The United States will also seek a forfeiture money judgment against the defendant in the amount of $295,027.50, which represents a sum of money equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses alleged in Counts One and Two of this Information; and

2. Upon conviction of the offenses alleged in Counts One and Two, the defendant shall forfeit to the United States equipment or thing used in, or to facilitate, these offenses, pursuant to Title 21, United States Code, Section 334.

3. Upon conviction of the offense alleged in Count Two, the defendant shall forfeit to the United States any property, real or personal, involved in this offense, and any property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1).  The United States will also seek a forfeiture money judgment against the defendant in the amount of $295,027.50, equal to the

value of the property, real or personal, involved in the offense alleged in Count Two, and any property traceable to such property.

    4.    If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the

value of the property described above, pursuant to 21 U.S.C. § 853(p).

    (**Criminal Forfeiture**, in violation of Title 18, United States Code, Section 982(a)(1) and Title 21, United States Code, Section 853)

        Respectfully Submitted,

        RONALD C. MACHEN JR.
        UNITED STATES ATTORNEY
        D.C. Bar No.  447889


        Linda I. Marks
        Senior Litigation Counsel
        Consumer Protection Branch
        U.S. Department of Justice
        P.O. Box 386
        Washington, D.C.  20044
        (202) 307-0060
        linda.marks@usdoj.gov


          /S/
BY:   JOHN P. DOMINGUEZ
        Assistant United States Attorney
        D.C. Bar No. 959-809
        Organized Crime and Narcotics Section
        555 4th Street, NW, Suite 4205
        Washington, DC 20001
        (202) 252-7684
        John.Dominguez@usdoj.gov